**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

District of Columbia, for the use and benefit of:

STRITTMATTER METRO, LLC,

      Plaintiff

      v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *et al.*

      Defendants

Civil Action No. 15-2114 (CKK)

**MEMORANDUM OPINION and ORDER**
(September 20, 2016)

In this case brought under the District of Columbia's Little Miller Act ("DCLMA"), D.C. Code § 2-201.02 *et seq.*, Plaintiff Strittmatter Metro, LLC ("Strittmatter") seeks to collect against the payment bond guaranteed by Defendants Fidelity and Deposit Company of Maryland ("Fidelity") and Zurich American Insurance Company ("Zurich") for the labor, materials, and/or equipment that Strittmatter furnished as a subcontractor on a construction project owned by the District of Columbia at Ballou Senior High School. Compl. ¶¶ 5-9. Before the Court is Defendants' [6] Motion to Dismiss or, in the Alternative, Stay Proceeding. Defendants contend that Plaintiff must first exhaust the dispute resolution procedure set out in the primary contract between the District and the prime contractor, Chiaramonte-Hess, a Joint Venture ("CHJV") before it may seek recourse under the DCLMA. Strittmatter has opposed the motion, but Defendants have not filed a reply. Upon consideration of the pleadings,[1] the relevant legal

---

[1] The Court's consideration has focused on the following documents:

- Defs.' Fidelity and Zurich's Mot. to Dismiss or, in the alternative, Stay Proceedings ("Defs.' Mot. to Dismiss"), ECF No. 6;
- Pl.'s Opp'n to Defs.' Mot. to Dismiss, or in the alternative, Stay Proceedings ("Pl.'s Opp'n"), ECF No. 7;
- Complaint ("Compl."), ECF No. 1, Ex. 1;

authorities, and the record as a whole, the Court DENIES Defendants' [6] Motion to Dismiss or, in the alternative, to Stay Proceedings.

## I. BACKGROUND

A.      The District of Columbia's Little Miller Act

A brief review of the operation and purpose of the DCLMA is instructive at the outset in framing the analysis of Defendants' instant motion. Although the DCLMA itself has been the subject of little judicial interpretation, because it is a statute very closely modeled on the Federal Miller Act, 40 U.S.C. § 3131, it is appropriate to look to the persuasive authority of those cases interpreting its federal counterpart. *See Castro v. Fidelity & Deposit Co. of Md.*, 39 F. Supp. 3d 1, 4-5 (D.D.C. 2014) (noting the paucity of judicial analysis of the DCLMA and looking to the persuasive authority of the Federal Miller Act); *Hartford Accident & Indem. Co. v. District of Columbia*, 441 A.2d 969, 972 (D.C. 1982) (adopting the interpretation of the Federal Miller Act by this District in *United States ex rel. Mariana v. Piracci Constr. Co., Inc.*, 405 F. Supp. 904 (D.D.C. 1975), in finding the DCLMA to allow a subcontractor to recover "delay damages"). *See also Campbell v. Cumbari Assocs., Inc.*, No. 3817-84, 1987 WL 114846, at *2 (D.D.C. July 6, 1987) ("Because the District and Federal provisions are virtually *in haec verba*, the Court may look to cases decided under the federal law for guidance in interpreting the local statute.").

The DCLMA, like the Federal Miller Act, seeks to address the precarious position in which subcontractors on government projects find themselves. *See, e.g., Castro*, 39 F. Supp. 3d at 5. In contrast to subcontractors on a private construction project, the subcontractor on a

---

- Prime Contract, Defs.' Mot. To Dismiss, Ex. 1; and
- Subcontract, Compl., Ex. B.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

government project is generally unable to protect itself from losses occasioned by default by the prime contractor by placing a lien on the property. *Id.* The DCLMA seeks to fill this gap, providing protection for subcontractors such as Strittmatter by requiring the prime contractor to secure a payment bond, upon which the subcontractor may recover in the event of default by the prime contractor. *Id.* (reviewing the history and purpose of the Federal Miller Act and the DCLMA). *See also F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974) (explaining that in the absence of the traditional protection of a lien upon which subcontractors on government projects can rely, "[t]he Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers"); *Hartford Accident*, 441 A.2d at 972 (rejecting a more limited application of the DCLMA and finding its provisions to extend to delay damages based on the guiding principle that the DCLMA's payment bond "was designed to protect subcontractors supplying labor and materials to a government project").

Like the Federal Miller Act, the DCLMA was fashioned with the particular purpose of providing aggrieved subcontractors with a mechanism for *promptly* recovering compensation. *See United States v. Zurich Am. Ins. Co.*, 99 F. Supp. 3d 543, 548 (E.D. Pa. 2015). Indeed, the Federal Miller Act was promulgated as a revision of the Heard Act and shortened the period between the completion of work by the subcontractor and accrual of the cause of action from six months to 90 days. It was Congress' intent in making this revision to remedy the "resultant hardships" to the subcontractor who, under the Heard Act, could be required to wait years following the completion of its work before he could recover the full payment due. *Id.* (quoting *United States v. Daniel, Urbahn, Seelye & Fuller*, 357 F. Supp. 853, 859 (N.D. Ill. 1973). Similarly, under the DCLMA, for a first-tier subcontractor such as Strittmatter (that is, a contractor who has contracted directly with the prime contractor), a cause of action accrues

under the DCLMA 90 days following the completion of work or delivery of materials, allowing it to seek recovery from the payment bond secured by the prime contractor with no additional procedural requirements imposed by the statute. D.C. Code § 2-201.02(a). The subcontractor must bring this action within the one year of the final day of its work or delivery of materials on the government project. D.C. Code § 2-201.02(b). This clear Congressional objective of providing a speedy remedy for an aggrieved subcontractor must be borne in mind when interpreting the interplay between the Miller Act (and the District's Little Miller Act) and any dispute resolution procedures set out in the prime contract. *United States ex rel. Straightline Corp. v. American Cas. Co. of Ready, Pa.*, No. 5:06-00011, 2007 WL 2050323, at *3 (N.D.W. Va. 2007) ("The Act 'should receive a liberal construction to effectuate its protective purposes.'" (quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957))).

B.     Factual Background

The District of Columbia entered into a contract with CHJV as the general or prime contractor for construction work on Ballou Senior High School. Compl. ¶ 5. In undertaking the project, CHJV thereafter contracted with Strittmatter, a subcontractor who was to furnish materials and/or equipment and render labor on the Ballou Senior High School project. *Id.* ¶¶ 7, 8. In January 2013, CHJV and Strittmatter executed both a Master Subcontract Agreement for a Stipulated Sum and a Subcontract Agreement Rider, which set out the initial price of Strittmatter's services and materials at $4.9 million, with provisions allowing for an expansion of the scope of work as the project progressed. *Id.* ¶ 7. Strittmatter claims to have duly performed but to have received only partial payment; Strittmatter seeks to recover additional payment in excess of $1.2 million. *Id.* ¶ 10.

In accordance with the District's Little Miller Act, D.C. Code § 2-201.01(a)(2) *et seq.*, CHJV secured a payment bond, thereby securing payment to subcontractors such as Strittmatter. Compl. ¶ 6. It is upon this bond that Strittmatter seeks to collect payment in this action before the Court, with the case having been removed from the Superior Court for the District of Columbia.

At issue before the Court in the instant motion are the provisions of the Prime Contract that govern the recourse available to CHJV as the prime contractor in the event of a dispute with the District of Columbia, and which dispute resolution procedures Defendants argue also bind Strittmatter. In short, absent agreement to the contrary, any dispute arising between CHJV and the District must first be referred to non-binding mediation, and, where mediation fails, all disputes must be brought before the District of Columbia Board of Contract Appeals. Defs.' Mot. to Dismiss at 4 (citing Article 12 of the Prime Contract). CHJV has indeed initiated the mediation process with respect to its claims against the District and has included Strittmatter's claims together with its own and on Strittmatter's behalf. Defs.' Mot. to Dismiss at 4. Strittmatter, by contrast, has sought recourse under the DCLMA in the instant action.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

Defendants predicate their argument for dismissal on the clauses of the subcontract that purport to fully integrate the terms of the Prime Contract, including those regarding dispute resolution, and thereby impose the obligations and extend the rights of the prime contract to Strittmatter. Defs.' Mot. to Dismiss, *passim*; Subcontract Arts. 1.3, 12.1. Defendants seek to enforce the Prime Contract's requirements of mediation and, where mediation fails to resolve the dispute, submission of claims to the District of Columbia Board of Contract Appeals against Strittmatter as a condition precedent to this action. Accordingly, Defendants argue that Strittmatter's failure to exhaust these remedies prior to filing this action requires dismissal upon the instant motion. In the Prime Contract, however, the District explicitly disclaims the very sort of relationship with subcontractors such as Strittmatter upon which Defendants rely. Pl.'s Opp'n, 11; Prime Contract § 4.3.8.2. Anticipating that "all or substantially all of the construction of the Project" would be completed by subcontractors, Prime Contract § 4.3.1, the District explicitly sets out in the Prime Contract that it is not in privity with any subcontractor, that subcontractors cannot seek compensation directly from the District (except where permitted by a mechanic's lien law), and that any subcontract entered into by the prime contractor must incorporate this provision. Prime Contract § 4.3.8.2. While Defendants assert that Strittmatter *must* seek recovery

from the District through the dispute resolution procedures set out in the Prime Contract,

Strittmatter responds that it *cannot* avail itself of these mechanisms because the District has only

consented to engage in such procedures with its Prime Contractor, here CHJV, leaving

Strittmatter with no recourse except under the DCLMA. Strittmatter contends that it cannot be

required to exhaust mediation and administrative remedies that are not available to it, and that is

the very gap that the DCLMA seeks to fill.

Accordingly, it is to the persuasive authority of cases interpreting the Federal Miller Act

and the DCLMA that the Court turns for guidance in its analysis. Such analysis, in turn, is

informed by the purpose of the DCLMA and its Federal counterpart; "The Miller Act is 'highly

remedial (and) entitled to a liberal construction and application in order properly to effectuate the

Congressional intent to protect those whose labor and materials go into public projects.'" *F. D.

Rich,* 417 U.S. at 124 (quoting *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins

Co.*, 322 U.S. 102, 107 (1944)). It is the sovereign immunity of the government and the lack of

privity of contract between the government owner of the project and the subcontractor from

which this need for remedial protection arises. "The Government does not recognize or deal with

the subcontractor and owes no obligation to him for the work he performs … . If the

subcontractor is not paid, his only remedy is a suit under the Miller Act." *United States ex rel.

B's Co. v. Cleveland Electric Co. of S.C.*, 373 F.2d 585, 588 (4th Cir. 1967) (citing *United States

v. Blair*, 321 U.S. 730, 737 (1944), in which the Court found that "[c]learly the subcontractor

could not recover this claim in a suit against the United States, for there was no express or

implied contract between him and the Government"). The District has set out for itself this very

arrangement by the clear language of the Prime Contract and has thereby declined to make

available to subcontractors such as Strittmatter the dispute resolution mechanisms available to the Prime Contractor. Prime Contract § 4.3.8.2.

Because the Prime Contractor cannot, through an incorporation clause of the subcontract, extend to its subcontractors recourse to a dispute resolution scheme that the government has explicitly declined to extend to it, exhaustion of any dispute resolution procedures cannot stand as a condition precedent to Strittmatter's claims under the DCLMA. *Castro*, 39 F. Supp. 3d at 5, 10 (holding that subcontractors are not required to exhaust any contractually prescribed administrative remedies before bringing a claim under the DCLMA); *Zurich Am. Ins. Co.*, 99 F. Supp. 3d at 546-47 (finding the terms of the subcontract seeking to incorporate the dispute resolution clauses contained in the prime contract to be no bar to the subcontractor's Miller Act claim); *Straightline*, 2007 WL 2050323, at *5 (finding the subcontractor's only available remedy was under the Miller Act despite dispute resolution provisions from the prime contract purportedly incorporated into the subcontract). Accordingly, Plaintiff may initiate a claim under the DCLMA without having first made efforts at recovery through alternate means.

Defendants' contention that Strittmatter must await the completion of the dispute resolution efforts initiated by the Prime Contractor CHJV that also include Strittmatter's claims must also fail. Not only does the subcontractor lack control over any efforts at recovery made on its behalf by the prime contractor, but such a requirement would be counter to the express purpose of the DCLMA to provide a prompt remedy to an aggrieved subcontractor. The United States District Court for the Eastern District of Pennsylvania reviewed the judicial treatment of this issue and expressed this proposition clearly in *Zurich American Insurance Co.*, a case in which the prime contractor incorporated the claims of the subcontractor along with its own

claims brought pursuant to the Contracts Disputes Act of 1978 (CDA) as required by the prime

contract in that case, writing:

> "Ordinarily the fact that a prime contractor has a claim for the same amount
> pending under the 'disputes clause' of the prime contract, does not affect Miller
> Act cases." *Fanderlik–Locke*, 285 F.2d at 942; *H.W. Caldwell v. U.S. for Use and
> Benefit of John H. Moon & Sons, Inc.*, 407 F.2d 21, 23-24 (5th Cir. 1969); *United
> States ex rel. Daro Tech, Ltd. v. Centerre Gov't Contracting Grp., LLC*, No. 13–
> 1811, 2014 WL 1215565, at *12 (D. Colo. Mar. 24, 2014). "[T]he obligation to
> pursue and to exhaust administrative remedies … is the prime contractor's
> obligation alone, and any conflict between these divergent remedies constitutes a
> business risk which the parties incur by virtue of their different contracts." *B's
> Co.*, 373 F.2d at 588. Moreover, it is a risk Congress imposed by placing the
> CDA's exhaustion requirement on prime contractors while granting
> subcontractors the right to sue ninety days after completion of their work.

99 F. Supp. 3d at 550-51. So too here, Plaintiff is under no obligation to await the resolution of

the Prime Contractor's claims. Not only would requiring Strittmatter to await the resolution of

CHJV's claims undermine the DCLMA's purpose of providing subcontractors on government

projects with a prompt remedy, but it would place Strittmatter at risk of seeing the expiration of

the one year statute of limitations under the DCLMA prior to the termination of CHJV's claims.

Under such a scheme, if CHJV did not prevail on the claims it brought on behalf of Strittmatter

or continued to withhold payment to Strittmatter for any other reason, Strittmatter could find

itself barred from recovery under the DLCMA, having been delayed in submitting its claim

through no fault of its own. The Court will not impose such an obstacle before Strittmatter in

exercising its rights under the DCLMA. *See, e.g.*, *United States ex rel. Walton Tech., Inc. v.

Weststar Eng'g, Inc.*, 290 F.3d 1199, 1208-09 (9th Cir. 2002) (finding that even an explicit "pay

if and when paid" clause of the subcontract agreement would effect a waiver of plaintiff's Miller

Act rights and accordingly declining to enforce the contract term and further holding that "[a]

subcontractor that has performed as agreed need not await the Government's payment of the

contractor before initiating an action under the Miller Act against the contractor *or* the surety.");

*United States ex rel. J.H. Lynch & Sons, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 783 F. Supp. 2d 294, 298 (D.R.I. 2011) ("It is well established that a pay-when-paid clause in the circumstances at bar does not foreclose a subcontractor's right to bring suit for payment under the Miller Act against a general contractor and its surety.").

Finally, the Court turns to Defendants' claim that because the payment Strittmatter seeks is incident to "acts, omissions, or responsibilities" of the District, they, as sureties of the Prime Contractor, are not proper defendants. Defs.' Mot. to Dismiss at 9. Although Defendants assert that permitting Strittmatter to proceed independently against them would "circumvent express terms of the Subcontract and Prime Contract," *id.*, the plain language and the express purpose of the DCLMA as discussed above make clear that the Defendants are precisely those against whom Strittmatter may pursue its claims. "It is clear 'that the surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act if the bond is to have its intended effect.'" *Zurich Am. Ins. Co.*, 99 F. Supp. 3d at 550 (quoting *Walton Tech.*, 290 F.3d at 1206. To find otherwise would render the Act ineffective, and for all of the foregoing reasons, dismissal of Plaintiff's claims is unwarranted.

Moreover, Defendants' request for a stay of these proceedings pending the outcome of CHJV's efforts to recover payment from the District is without basis and shall also be denied by this Court. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). Moreover, a party requesting a stay of

proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. Defendants have failed to articulate the requisite hardship or inequity that they would suffer and might justify a stay, but rather reiterate their assertion that they have no liability to Strittmatter "except to give [Strittmatter] the opportunity to exercise the rights [regarding dispute resolution] in the Prime Contract." Defs.' Mot. to Dismiss at 10 (quoting Subcontract Art. 12.1.). This assertion is no more compelling as the basis for a stay than it is as a basis for dismissal. To grant the stay as requested by Defendants would undermine the express purpose of the DCLMA to provide a mechanism for prompt recovery by subcontractors and would be both unjustified and improper. *See Zurich Am. Ins. Co.*, 99 F. Supp. 3d at 550-51 (denying a stay in proceedings under similar circumstance).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendants' [6] Motion to Dismiss or, in the Alternative, Stay Proceeding is DENIED ; and it is

FURTHER ORDERED that Defendants shall file an Answer in this matter on or before October 11, 2016.

Dated: September 20, 2016

                                     /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge